UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
UNITED STATES OF AMERICA,

    -against-

GREG CANTONI,

         Defendant.
------------------------------------------------------------- x

SHORT FORM
MEMORANDUM & ORDER

18-cr-562 (ENV)

VITALIANO, D.J.

  Jury selection in this case is scheduled to start on April 1, 2019. The government has filed a motion *in limine*, and defendant has cross-moved and raised several issues in opposition. Having considered the submissions of the parties and the arguments of counsel at the hearing on March 15, 2019, the motions are resolved in the manner and for the reasons set forth below.

| Motion | Ruling |
|---|---|
| Defendant's Motion *in Limine* ||
| (A) Cantoni moves to preclude the government from presenting handwriting evidence to the jury or arguing to the jury that the handwriting in the demand notes is similar or from a common source. | (A) The government has provided notice that it intends to call two New York Police Department ("NYPD") handwriting experts to testify that the writing on several demand notes that Cantoni allegedly produced during the charged robberies came from a common source. Cantoni argues that this testimony should be excluded because the government's Rule 16(a)(1)(G) disclosures are inadequate, the testimony threatens to mislead or confuse the jury, in contravention of Rule 403 of the Federal |

1

Rules of Evidence, and the experts' methods fail to meet the requirements of Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). Defendant's motion is granted, and the testimony will be excluded, pursuant to Rule 403, which permits the Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," Fed. R. Evid. 403. The Court does not reach the question of the adequacy of the government's disclosures or the proffered testimony's compliance with Rule 702 and *Daubert*.

The government indicates that its experts will testify only that the demand notes came from a common source; they will not testify that Cantoni was the author of the notes. This limitation is necessary because the government never obtained a sample of Cantoni's handwriting and, consequently, never compared his handwriting to the writing on the notes. Notwithstanding this limitation, the clear thrust of the testimony is to

| | |
|---|---|
| | suggest that Cantoni was the author of the notes and, thereby, to label him as the perpetrator of the robberies.<br><br>Assuming *arguendo* that the government's disclosures were adequate and that the experts' analysis satisfies Rule 702 and *Daubert*, the record makes clear that the government had scientifically inadequate evidence to determine that Cantoni was the author of the notes. The jury, however, is likely to be misled into believing that the government reached this conclusion or, in the alternative, to reach this conclusion independently on the basis of evidence the government itself found insufficient. Cantoni will be substantially prejudiced if the jury is led to believe that an expert placed him as the author of the demand notes, when no expert did so. Because the risk that the jury will be misled or confused and that the defendant will be unfairly prejudiced substantially outweighs the probative value of testimony that the notes were written by the same person, the handwriting expert testimony will be excluded. |
| (B) Cantoni moves to preclude the government from introducing evidence of license plate reader | (B) NYPD used a license plate reader ("LPR") to identify Cantoni's vehicle on Fort Hamilton Parkway in Brooklyn, approximately one block away from the |

| results, which he believes the government may offer to show that his car was parked near TD Bank at the time of the alleged robbery. | August 5, 2018 robbery of a TD Bank branch. (Gov't's Reply at 3, ECF No. 35). Cantoni moves to exclude this evidence on the grounds that LPRs make errors, that technology may have been used to magnify the image of Cantoni's license plate, and that the LPR evidence is subject to, and fails, *Daubert* analysis. To the extent that defendant has concerns about the technology and its use in this case, he may explore them on cross-examination. Any concerns about the manipulation of the license plate image may similarly be explored in examining the custodian of the LPR results.<br><br>Cantoni's concerns about Rule 702 and *Daubert* are without foundation because the evidence generated from LPR technology, a technology in common and widespread use for homeland defense, is not expert opinion subject to gatekeeping by the Court. Although an analyst, like a photographer, may have used some technological skill to magnify the image of Cantoni's license plate, an image is not an opinion, and no scientific training or special qualifications are required to attest to the number on a photographed license plate. Moreover, as the government notes, the LPR photograph |

it seeks to offer does not suffer from the same defects as the photograph at issue in *Green v. City and County of San Francisco*, which was taken when "[i]t was late and dark outside, which rendered the photograph blurry and illegible," 751 F.3d 1039, 1042 (9th Cir. 2014). The LPR photograph here was taken during broad daylight, and Cantoni's reliance on *Green* is, therefore, misplaced.

In support of a related motion to exclude cell phone location data, a matter decided in a separate order issued today, Cantoni notes that he gave his license plate number and a description of his car to an FBI agent after he had invoked his right to counsel. (Def.'s Reply at 12, ECF No. 46). He suggests that any statement regarding his car should, therefore, be excluded. However, his statement was routine booking information exempt from the requirements of *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966). *See Pennsylvania v. Muniz*, 496 U.S. 582, 601, 110 S. Ct. 2638, 110 L. Ed. 2d 528 (1990); *Rosa v. McCray*, 396 F.3d 210, 221 (2d Cir. 2005). Discovery makes clear that this information was recorded on the United States Marshals Service's standard USM-312 intake form.

Moreover, Cantoni himself notes that the government already "knew that License Plate Reader data had linked a car near the scene of at least one of the robberies to Mr. Cantoni when [the FBI agent] asked Mr. Cantoni for a description of his car." (Def.'s Reply at 12). Cantoni's statement, apparently, was cumulative of information the government already possessed. Additionally, the government easily could have determined Cantoni's license plate number and received a description of his car by searching government records. "[T]he independent source doctrine allows trial courts to admit evidence" that would otherwise be barred by the exclusionary rule "if officers independently acquired it from a separate, independent source." *Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016) (citing *Murray v. United States*, 487 U.S. 533, 537, 108 S. Ct. 2529, 101 L. Ed. 2d 472 (1988)). Similarly, "the inevitable discovery doctrine allows for admission of evidence that would have been discovered even without the unconstitutional source." *Id.* (citing *Nix v. Williams*, 467 U.S. 431, 443-44, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984)). Under either of these doctrines, any *Miranda* violation would not preclude the use of

|  | Cantoni's statement of his license plate number or description of his car. |
|---|---|
|  | Regardless, not to lose sight of the forest for the trees, no *Miranda* violation took place because of the exception for routine booking and pedigree questions. Cantoni's motion to preclude the LPR evidence is denied. |

| Government's Motion *in Limine* ||
|---|---|
| (A) The government moves to admit evidence of Cantoni's financial motive to commit the charged offenses. In particular, it seeks to admit evidence that Cantoni opened three lines of credit that he had no ability to pay while simultaneously starting the first of the three charged bank robberies. | (A) "In prosecutions for crimes whose purpose is pecuniary gain . . . evidence of substantial indebtedness is relevant to prove the motive for committing such crimes." 2 Weinstein's Federal Evidence § 401.08[5]. Specifically, the government seeks to admit this evidence as "other acts" evidence to prove motive, pursuant to Rule 404(b). The Second Circuit has recognized that evidence of a criminal defendant's debt is admissible for this purpose. *United States v. Reed*, 639 F.2d 896, 907 (2d Cir. 1981). Indeed, more generally, "[t]he Second Circuit has adopted an 'inclusionary' approach to other act evidence under Rule 404(b), which allows such evidence to be admitted for any purpose other than to demonstrate criminal propensity." *United States v.* |

7

*LaFlam*, 369 F.3d 153, 156 (2d Cir. 2004). Consequently, the government may present evidence of Cantoni's financial hardships to prove motive to commit bank robbery.

Cantoni accepts that evidence of financial difficulties may be admissible but contends that it should be limited to evidence of those financial difficulties that arose prior to the commission of the charged robberies. Keying focus on the government's proffer of evidence that Cantoni's credit card accounts were past due in December 2018 – three months after the last robbery on September 10, 2018 – Cantoni argues that this evidence is irrelevant to his motive at the time of the charged robberies and threatens to mislead the jury, particularly in light of the fact that Cantoni has been incarcerated since September 20, 2018. (Def.'s Resp. at 5, ECF No. 28). Presenting this evidence, Cantoni claims, would require him either to disclose to the jury that he was incarcerated or to allow the jury to speculate as to why his accounts were past due. At oral argument, the government agreed to limit its evidence of financial motive to lines of credit, debts, and defaults that arose

| | prior to Cantoni's incarceration. With this concession, therefore, the government's motion is granted, subject to its proffered limitation. |
|---|---|
| (B) The government moves to preclude evidence and argument concerning Cantoni's possible punishment. | (B) "It is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" *Shannon v. United States*, 512 U.S. 573, 579, 114 S. Ct. 2419, 129 L. Ed. 2d 459 (1994) (quoting *Rogers v. United States*, 422 U.S. 35, 40, 95 S. Ct. 2091, 45 L. Ed. 2d 1 (1975)). In light of this rule, evidence regarding Cantoni's possible punishment does not make any "more or less probable . . . [any] fact [that] is of consequence in determining the action," Fed. R. Evid. 401. Such evidence is, therefore, "[i]rrelevant" and "not admissible," *id.* Although defendant represents that he does not intend to offer evidence of his potential punishment at trial, (Def.'s Resp. at 1), in line with the "well-established precedent that jurors should not be informed about the possible consequences of their verdict," *United States v. Watts*, 934 F. Supp. 2d 451, 464-65 (E.D.N.Y. 2013), the Court grants the government's motion to preclude defendant from offering evidence of his potential imprisonment. |

To the extent that Cantoni seeks to "reserve the more general right to argue that the government's evidence is not sufficiently reliable to send a man to jail," (Def.'s Resp. at 2), the Court permits him to do so. This argument is little more than a general attack on the government's case and statement of the government's heavy burden of proof, each of which is eminently appropriate argument by a criminal defendant. Moreover, the government does not appear to oppose this request.

The government argues that, "to the extent that defendant exercises his right to testify, the government should be permitted to cross-examine him regarding the potential consequences of conviction that he faces because, then, it is relevant to the defendant's credibility as a witness." (Gov't Mot. at 6, ECF No. 27). Cantoni responds that, while this may represent an appropriate form of impeachment for non-defendant witnesses, it is not an appropriate way to impeach a defendant witness, although he cites no law in support of this proposition. The government makes no reply to Cantoni's argument.

| | The Court concludes that, under Rule 403, this form of cross-examination must be precluded. Evidence of the possible consequences of conviction is of limited probative value, as the jury will already be aware that the defendant is on trial. However, the risk that this evidence will mislead the jury into considering the possible punishment is substantial. |
|---|---|

So Ordered.

Dated: Brooklyn, New York
      March 19, 2019

                                              /s/ Hon. Eric N. Vitaliano
                                              ERIC N. VITALIANO
                                              United States District Judge