

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

JD:DJL/TAW                          *271 Cadman Plaza East*
F.#2018R01902                       *Brooklyn, New York 11201*


March 28, 2019


By ECF & Hand

The Honorable Eric N. Vitaliano
United States District Court Judge
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: United States v. Greg Cantoni
       Criminal Docket No. 18-562 (ENV)

Dear Judge Vitaliano:

    The government respectfully submits this letter motion to quash the defendant
Greg Cantoni's subpoenas to 3Si Security Systems ("3Si") in the above-referenced case. As
set forth herein, the defendant seeks to subpoena records that are entirely irrelevant to the
facts of this case and can only be used improperly as impeachment material. Additionally,
the irrelevant information requested is also protected trade secrets belonging to 3Si. The
Court, therefore, should quash the subpoenas.

I.  Background

    When the defendant robbed the Fort Hamilton branch of TD Bank in
Brooklyn, New York, a GPS tracker was placed in the money that he demanded. That GPS
tracker was provided to TD Bank by its security company, 3Si. That GPS tracker records
location data (among other data) which is kept by 3Si. This information was provided to the
defendant in discovery. That GPS tracking data shows that the defendant took the money
from the bank and went directly to where the New York City Police Department license plate
reader results placed the defendant's car– less than a block from the robbery – less than an
hour before the robbery.

    On March 27, 2019, the defendant served two subpoenas on 3Si for: (1)
"copies of <u>any and all</u> manuals, training guides, user handbooks, protocols and brochures
associated with CASH TRACKER-Financial a.k.a. 4XG Cash tracker" and (2) "copies of
<u>any and all manuals</u>, training guides, user handbooks, protocols and brochures associated
with the SecuirtyPac System." (<u>See</u> Exs. A and B) (emphasis added).

II.   The Subpoenas Should Be Quashed

A.   Applicable Law

The use of Rule 17 subpoenas in criminal cases is governed by the Supreme Court's decision in United States v. Nixon, 418 U.S. 683 (1974).  The Nixon Court principally recognized that the Rule 17 subpoena "was not intended to provide a means of discovery for criminal cases."  Nixon, 418 U.S. at 698.  It therefore held that, in order to require production of materials prior to trial, the moving party must show:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

Id. at 699-700 (citing Bowman Dairy Co. v. United States, 341 U.S. 214, 220 (1951)).  The Court specified that, "[a]gainst this background," the subpoena proponent must "clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity."  Id. at 700.

In keeping with these principles, courts have consistently required that a party's subpoena "must be able to reasonably specify the information contained or believed to be contained in the documents sought rather than merely hop[e] that something useful will turn up."  United States v. Louis, No. 04-CR-203, 2005 WL 180885, at *5 (S.D.N.Y. Jan. 27, 2005) (alteration in original) (internal quotation marks and citation omitted).  Thus, courts have found that "[s]ubpoenas seeking 'any and all' materials, without mention of 'specific admissible evidence,' justify the inference that the defense is engaging in the type of 'fishing expedition' prohibited by Nixon."  United States v. Mendinueta-Ibarro, 956 F. Supp. 2d 511, at 515 (S.D.N.Y. 2013) (quashing defendant subpoena under Nixon because subpoena seeking "any and all documents" from local law enforcement relating to an investigation lacked requisite specificity and requested materials that may never be admissible and were statutorily protected from pre-trial disclosure); see also United States v. Chen De Yian, No. 94-CR-719, 1995 WL 614563, at *2 (S.D.N.Y. Jan. 6, 2000) (granting government's motion to quash defendant's subpoena to county sheriff's department asking for "'all records, including . . . documents, memoranda, reports, notes . . . pertaining to'" the investigation of charged deaths because subpoena not crafted to call for admissible evidence and because request for entire investigative file was "accurately described as a fishing expedition"); Louis, 2005 WL 180885, at *5 (quashing defendant's subpoena on the basis that it constituted a fishing expedition because it sought "'any and all' documents related to several

2

categories of subject matter (some of them quite large), rather than specific evidentiary items, thus clearly indicating that Defendant [sought] to obtain information helpful to the defense by examining large quantities of documents"); United States v. McDonald, No. 1:10-CR-29, 2010 WL 1734773, at *4 (E.D. Va. April 26, 2010) (granting government's motion to quash defendant's subpoenas seeking "'[a]ny and all records notes, reports, memorandum, and/or documents and things in any form maintained by' Detective Woods of the Arlington County Police Department and the Arlington County Victim/Witness Program regarding Kyle Matthew McDonald" as insufficiently specific and constituting a fishing expedition); United States v. McDonald, 444 Fed. App'x 710, 711-12 (4th Cir. 2011) (upholding district court's decision to quash defendant's subpoenas to local law enforcement because subpoena was overbroad, unspecific, and the district court properly found defendant was using subpoenas to engage in a fishing expedition).

Courts have so held even where defendants have proffered that the requested materials might possibly reveal some larger conspiracy or impropriety aimed at the defendant, see, e.g., United States v. Barnes, 560 Fed. App'x 36, 39-40 (2d Cir. 2014) (upholding district court's decision to quash defendant's subpoena for records on the basis that the defendant was engaged in a fishing expedition where the defendant could proffer only speculation that inmates cooperating with the government were conspiring to testify falsely against him and the subpoenaed materials would so demonstrate); cf. United States v. Weissman, No. 01-CR-529, 2002 WL 31875410, at *1 (S.D.N.Y. 2002) (quashing subpoena because defense counsel "merely speculate[d] that the materials may constitute inconsistent statements" and did "not know what value the materials [would] have"), or when the defendant claims that the subpoenaed materials are necessary to obtain Brady or Giglio materials, see, e.g., Mendinueta-Ibarro, 956 F. Supp. 2d at 512, 514-15 (quashing defendant's subpoena to NYPD in federal prosecution seeking, in part, allegedly undisclosed Brady and Giglio material).

In addition, Nixon established that Rule 17 subpoenas could generally not be used to obtain impeachment materials. See Nixon, 418 U.S. at 701 ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."); see also Weissman, 2002 WL 31875410, at *1 (citing cases that "articulate an absolute prohibition on the use of a Rule 17(c) subpoena solely for impeachment purposes").

Furthermore, the Federal Rules of Criminal Procedure explicitly preclude the use of subpoenas to seek prior statements by prospective witnesses. In particular, Rule 17(h)

3

provides that "[n]o party may subpoena a statement of a witness or of a prospective witness under this rule.  Rule 26.2 governs the production of the statement."[1]  Fed. R. Crim. P. 17(h).

Finally, in addition to the limitations placed on Rule 17 subpoenas by Nixon, courts have also recognized that Rule 17 subpoenas are constrained by various other procedural and statutory provisions.  For example, Federal Rule of Criminal Procedure 16(a)(2) "protects from subpoena any reports made by government agents during the course of an investigation or prosecution."  See, e.g., Mendinueta-Ibarro, 956 F. Supp. 2d at 514, 515 (quashing defendant's subpoena, in part, because it sought from local law enforcement assisting the federal government in its investigation materials that necessarily included reports made by government agents protected by Rule 16(a)(2)); see also Bowman Dairy Co. 341 U.S. at 220 ("It was not intended by Rule 16 to give a limited right of discovery and then by Rule 17 to give a right of discovery in the broadest terms."); Chen De Yian, 1995 WL 614563, at *1 (quashing subpoena to local law enforcement which conducted independent investigation of federally charged murders where service of subpoena would circumvent prohibition under Rule 16(a)(2) barring production of reports generated by law enforcement).

In addition, the statutory provisions of Title 18, Section 3500 of the United States Code ("Section 3500") bar the disclosure of any witness statement before trial, thereby limiting the scope of Rule 17 subpoenas as they relate to witness statements.  See, e.g., United States v. Hatfield, 2009 U.S. Dist. LEXIS 60184, *2-*4 (E.D.N.Y. July 14, 2009) (quashing subpoena for witness statements because it failed to meet the Nixon requirements and violated Rule 17(h) and Section 3500); United States v. Khan, 2009 U.S. Dist. LEXIS 8692, *8-*9 (E.D.N.Y. Jan. 20, 2009) (quashing subpoenas for prior statements of potential government witnesses because they violated Rule 17 and Section 3500); Mendinueta-Ibarro, 956 F. Supp. 2d at 515 (quashing subpoena to local law enforcement where "'any and all' language of the subpoena would encompass [witness] statements" covered by Section 3500); Louis, 2005 WL 180885, at *5 (quashing subpoena that likely called for material covered by Section 3500, in part, because the Court cannot require the production of "3500 material" prior to the conclusion of a witness's direct testimony).

B.    Discussion

The defendants' subpoenas for "any and all manuals, training guides, user handbooks, protocols, and brochures" associated with the 4XG Cash Tracker and SecurityPac System should be quashed because they plainly fail to meet the Nixon

---

[1]    Rule 26.2, in turn, provides, in relevant part, that upon the motion of a party who did not call a witness, the court must order the party calling the witness to produce "any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony."  Fed. R. Crim. P. 26.2.

requirements for a Rule 17 subpoena, are irrelevant, and can only be used improperly for impeachment purposes.

First, the defendant's subpoenas, which seek "any and all manuals, training guides, user handbooks, protocols and brochures associated with the" GPS tracker and SecurityPac System.  This is a request for all information regarding these items and do not specifically seek "evidentiary" materials or "admissible" evidence, and are thereby subject to quashing under Nixon.  The defendant does not, and cannot, represent to the Court that the documents and materials sought by the subpoenas would be admissible at trial.  Absent any basis to conclude that these documents and materials, would be admissible, the subpoena should be quashed.  Nixon, 418 U.S. at 699-701.

Second, the subpoenas should also be quashed pursuant to Nixon's relevance and specificity requirements, and its prohibition on "fishing expedition[s]."  Significantly, the defendant's subpoenas do not seek specific items of evidence that are known to exist, such as a specific document recording a specific incident on a specific date.  Instead, the subpoenas seek "any and all manuals, training guides, user handbooks, protocols and brochures associated" with the products including, for the GPS tracker "any written or visual material/guides provided to the end users and law enforcement explaining/describing the use of said product" and that 3Si "must bring with you two intact (undetonated) SecurityPac Dye Packs."[2]

Nor do the subpoenas seek relevant evidence.  Critically here, the information requested is entirely irrelevant. 3Si did not provide any of the dye packs (the SecurityPac System) that were given to the defendant following the robberies.  Accordingly, "any and all" information about the dye packs have no relevancy or basis in this case.  Additionally, the "CASH TRACKER-Financial a.k.a. 4XG Cash tracker" was not what was used by TD Bank at the time– and was not the tracker that was given to the defendant after he robbed the bank.  Again, "any and all" information about that tracker is irrelevant here.  The defendant's request amounts to the hope that the subpoenaed files might reveal some information that may be useful.  Notably, "[m]ateriality to the preparation of the defense, within the meaning of Rule 16(a)(1)(E)(i), means 'more than that the evidence in question bears some abstract logical relationship to the issues in the case.  There must be some indication that the pretrial

---

[2] There are several additional issues that warrant denial of the defendant's request for "two intact (undetonated) SecuirtyPac Dye Packs."  First, the provision of an undetonated dye pack poses a clear safety risk to individuals in its vicinity and exposes 3Si to unnecessary liability.  The SecurityPac is specifically manufactured to include CS gas (2-chlorobenzalmalononitrile) and other harmful chemicals.  Second, because these products are manufactured for 3Si, it takes time to procure the items.

disclosure of the disputed evidence would . . . enable[e] the defendant significantly to alter the quantum of proof in his favor." Louis, 2005 WL 180885, at *2, *3 (quoting United States v. Maniktala, 934 F.2d 25, 29 (2d Cir. 1991) (quashing defendant's subpoena where defendant's arguments for relevance and necessity consisted almost "exclusively of blanket invocations" of the Sixth Amendment and "conclusory arguments that the subject matter of the documents [went] to the heart of his arguments").  "Any and all" information about 3Si dye packs and GPS trackers that were not used in this case can have no such effect.

At best, the defendant is attempting to review the manuals, guides, protocols and brochures in an attempt to obtain impeachment evidence of any 3Si witnesses that may testify at trial.  Even if such information was contained in these materials, as discussed above, it is well established that a Rule 17 subpoena is an improper means by which to obtain Jencks Act or Giglio material.  Accordingly, the defendant's subpoena requests can only be categorized as a fishing expedition, which the Supreme Court has specifically prohibited under Nixon.

III.    Conclusion

For the foregoing reasons, the government respectfully submits that the subpoenas should be quashed.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney
Eastern District of New York

By:    _____/s_____
David J. Lizmi
Temidayo Aganga-Williams
Assistant U.S. Attorneys
(718) 254-7010/6183

cc:    Clerk of the Court (ENV) (by ECF)
Deirdre von Dornum, Esq. (by ECF)
Allegra Glashausser, Esq. (by ECF)