UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
UNITED STATES OF AMERICA :
               -against- : MEMORANDUM & ORDER
GREG CANTONI, : 18-cr-562 (ENV)
                        Defendant. :
------------------------------------------------------------- x

VITALIANO, D.J.

In the death throes of an epic pretrial struggle over the admissibility of certain science-based evidence, defendant Greg Cantoni has once again moved to preclude the government from offering expert testimony regarding cell phone location data, and the government has cross-moved to preclude Cantoni from offering the testimony of a competing expert. As spread on the record during the hearing held on March 29, 2019 concerning these motions and a variety of other issues, and for the reasons that follow, Cantoni's motion is denied, and the government's cross-motion is granted.

With echoes of his previous arguments, Cantoni contends that the government's expert disclosure is inadequate and that cell phone location analysis is insufficiently reliable to form the basis of an admissible expert opinion. The first level of attack relates to the government's compliance with Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure, which requires the government to disclose, upon a defendant's request, a summary of any anticipated expert testimony. This summary must "describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(a)(1)(G). In a previous order, the Court directed the government "to supply defendant with a description of the expert's methodology and how it was applied to the data available here," and noted that "this disclosure must include more than the mere name of the method and must set forth details to enable

1

determination of whether the method was reliable." (Mem. & Order at 7, ECF No. 47). The disclosure the government has now provided offers sufficient detail to enable defense counsel to understand the opinion the expert will offer and to prepare a response. It includes the expert's curriculum vitae, as well as a ten-slide presentation documenting his analysis. This comes on top of the extensive cell phone records previously produced. Despite the substantive fulsomeness of the disclosure made by the government in response to the Court's order, Cantoni still strikes out against it. His motion notes a variety of alleged shortcomings in the analysis provided. Yet, whatever merit his gripes may have, they appear to be fodder for cross-examination rather than reasons to find the disclosure inadequate. For example, Cantoni points out that the government's disclosure depicts only "the 'primary direction' of the coverage area" for each cell tower rather than "the actual . . . footprint or coverage area." (Def. Mot. at 4, ECF No. 62). This does not represent a deficiency in the disclosure but, instead, a limitation of the testimony of the government's expert. It was precisely this limitation that led to the Court's ruling at oral argument on March 29, 2019 that the government revise its trial exhibits to clarify that its expert did not form an opinion as to the distance of Cantoni's cell phone from the various cell towers that it "pinged" but merely an opinion as to his geographical direction relative to those cell towers. Specifically, the government was directed to remove the shaded sectors from its exhibits to avoid any confusion that they might also suggest distance as well as direction.

Cantoni presses on, arguing further that the government's expert should be precluded from testifying because historical cellular location data are unreliable. This objection is tested against Rule 702 of the Federal Rules of Evidence, which permits "[a] witness who is qualified as an expert" to "testify in the form of an opinion or otherwise if" (a) the expert's specialized knowledge will help the jury "to understand the evidence or to determine a fact in issue," (b) "the

testimony is based on sufficient facts or data," (c) "the testimony is the product of reliable principles and methods," and (d) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. In assessing whether an expert's testimony "rests on a reliable foundation and is relevant to the task at hand," a court may consider whether the methodology (1) can be or has been tested, (2) has been subjected to peer review, (3) has a known error rate, (4) has controlling standards, and (5) has gained general acceptance in the scientific community. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593-94, 597 (1993). The Supreme Court has recognized that, despite this threshold requirement, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 595-96.

In his critique of the expert report disclosed by the government, Cantoni contends that the report suggests that a cell phone connects to the nearest cell tower at the time a call is placed when, in fact, a cell phone connects to the tower emitting the best quality signal at that time. (Mot. at 6). He further argues that the government's expert failed to validate his conclusion by using a method called "drive testing" or by documenting his consideration of topography, weather, and other factors that could affect the analysis. Although these supposed shortcomings may cast doubt on some or all of the findings to be offered by the government's expert, they are issues to be raised on cross-examination rather than concerns so severe as to undermine the admissibility of the expert testimony and require that it be precluded. Cantoni lists what he labels best practices to which the government's expert allegedly failed to adhere, but as with the best practices for latent fingerprint analysis discussed in deciding an earlier defense motion, (*see* Mem. & Order, ECF No. 48), defense counsel may raise the pitfalls they claim hollow out the

3

government's analysis on cross-examination. As noted in the first go-round, historical cellular location data have routinely been the subject of admissible expert testimony in this district, *see, e.g., United States v. Krivoi*, No. 18-cr-100 (ENV) (E.D.N.Y. Nov. 6, 2018), and the Court declines to find them unreliable on the basis of defendant's concerns. Numerous other courts have arrived at the same conclusion. *See, e.g., United States v. Schaffer*, 439 F. App'x 344, 347 (5th Cir. 2011) (per curiam); *United States v. Rosario*, No. 09-cr-415 (VEC), 2014 WL 6073634, at *1-3 (S.D.N.Y. Nov. 14, 2014); *United States v. Machado-Erazo*, 950 F. Supp. 2d 49, 53-57 (D.D.C. 2013), *aff'd*, 901 F.3d 326 (D.C. Cir. 2018); *United States v. Fama*, No. 12-cr-186 (WFK), 2012 WL 6102700, at *3-4 (E.D.N.Y. Dec. 10, 2012); *United States v. Allums*, No. 08-cr-30 (TS), 2009 WL 806748, at *2 (D. Utah Mar. 24, 2009).

Switching to a different lens, Cantoni attacks the admission in evidence of the cell phone location analysis on the ground that it is irrelevant or, in the alternative, more prejudicial than probative. He contends that, because a cell phone does not necessarily connect to the nearest cell tower, evidence that it connected to a particular tower does not make any fact that is of consequence more or less probable. *See generally* Fed. R. Evid. 401. Although, as the defense asserts, a cell phone may not always connect to the nearest cell tower, that is the red herring in the defense argument. With respect to whichever tower a cell phone *actually* connected to, the historical data relating to that actual connection can establish the connecting cell phone's direction relative to that tower at the time of connection. As applied here, the data might place Cantoni and his cell phone within an area that includes the sites of the charged robberies. Therefore, even though the data cannot pinpoint the cell phone's distance from the connecting tower, as the government's expert acknowledges, the cell phone location data are clearly relevant to show whether the robbery scene was within the arc that might be created from the directional

radio information.

As to the concern about unfair prejudice, *see generally* Fed. R. Evid. 403, the probative value of the location analysis is sufficient to overcome any risk of unfair prejudice, particularly given defense counsel's opportunity to cross-examine the government's expert on the claimed weaknesses in his analysis. Again, the government's expert disclosure makes clear that the expert will not overstate his conclusions. That is, he will not claim that his analysis can place Cantoni's cell phone at a precise location. With that understanding, at bottom, the government's disclosure illustrates the utility of the expert's analysis and his directional determination in helping to identify Cantoni's location during the charged robberies. Defendant's brief collaterally makes clear that defense counsel is well-prepared to cross-examine the government's expert. Given the substantial probative value and limited risk of unfair prejudice, the Court will not preclude testimony from the government's expert.

The government now switches from the shield to the sword. As he did in response to the government's latent print analysis, Cantoni has offered his own competing expert – John B. Minor – to cast doubt on the conclusions of the government's expert. Similarly, the government has moved to preclude this testimony. The arguments parallel those raised in response to Dr. Simon Cole, Cantoni's proffered expert on latent print analysis, whose testimony the Court precluded. As with Dr. Cole, Minor merely reviewed and highlighted weaknesses in the government's analysis, which, as previewed in the oral argument of March 29, 2019, strongly suggest his opinions are fixed on matters of general cell phone technology and towers that Cantoni's cell phone did not "ping" as opposed the ones it did "ping." Minor, for example, did not perform his own analysis of the actual cell phone location data provided by the carrier or arrive at a conclusion that such data established that Cantoni was not at the site of the charged

robberies when they occurred or even that Cantoni's cell phone was not located in the direction relative to the actually "pinged" tower that the government's expert claimed it was. The government's expert applied a specialized methodology to the facts. As related in the defense briefing and argument so far, citing essentially to himself for support, Minor would engage in a mini-trial about the utility of directional cell phone data with a focus on matters beyond the historical fact that, as actually recorded, at a certain precise time, Cantoni's cell phone connected to a certain precise cell tower. Any opinion Minor may provide as to other matters would only lead to jury confusion. Moreover, a vigorous cross-examination can expose whatever shortcomings there may be in the analysis of the government expert without the mini-trial on cell phone data that Minor's testimony would bring. Consequently, on the showing made by the defense thus far, Minor will be precluded from testifying at trial as an expert.

## Conclusion

For the foregoing reasons, defendant's motion is denied, and the government's cross-motion is granted.

So Ordered.

Dated: Brooklyn, New York
       March 31, 2019

/s/ Hon. Eric N. Vitaliano
ERIC N. VITALIANO
United States District Judge